IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN MICHAEL WEST,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT LABORATORIES, INC.,<br><br>Defendant. | Case No. 22-cv-07649-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

In this case, pro se Plaintiff Stephen West ("West") alleges that his former employer, Defendant Scott Laboratories, Inc. ("Scott Labs"), violated the Americans with Disabilities Act of 1990 ("ADA") and the ADA Amendments Act of 2008 ("ADAAA") by discriminating and retaliating against him based on a perceived disability. Compl. (dkt. 1). Scott Labs moves to dismiss West's complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mot. (dkt. 11). West opposes and requests leave to amend. Opp'n (dkt. 12). Scott Labs replies. Reply (dkt. 13). The Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and GRANTS Scott Labs' motion to dismiss with prejudice.

**I.   BACKGROUND**

   **A.   Plaintiff's Allegations**

West worked for Scott Labs as a Senior Service Technician, providing field service technical assistance since September 2018. Compl. ¶ 35; West's Affidavit in Support of Complaint ("Affidavit") (dkt. 1-1) ¶ 10. On July 12, 2021, Tyler Smith ("Smith"), Scott Labs' Parts and Service Manager, emailed West to ask him to enroll in Scott Labs' COVID-19 testing program. Affidavit ¶ 11; Affidavit Ex. A-1. West told Smith that he

was not interested. Id.

On September 7, 2021, Smith informed West that West needed to comply with Scott Labs' policy, which required every employee who interacts with customers face-to-face to complete at-home COVID-19 tests. Id. ¶ 12; id. Ex. A-2. West replied to Smith the following day, requesting information about, among other matters, the safety and ingredients of the COVID-19 tests. Id. ¶ 13; id. Ex. A-3.

On September 9 or 10, 2021, Max Levine ("Levine"), COO of Scott Labs, called West and "offered an ultimatum": West was to comply with the COVID-19 testing policy or be terminated. Id. ¶ 14. Levine called West again on September 13, 2021 to ask West to consent to testing. Id. ¶ 15. Because West "had not received the necessary safety information" that he had previously requested from Smith, he did not consent. Id.

On September 14, 2021, Levine, Smith, and Evelyn Padilla ("Padilla"), a Scott Labs employee, called West to terminate his employment for not submitting to Scott Labs' COVID-19 testing policy. Id. ¶ 16. Later that day, Padilla emailed West a letter reiterating the explanation for West's termination, and stating that West's employment with Scott Labs was terminated, effective immediately. Id. Ex. A-4.

West subsequently filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"). Id. ¶ 17. On September 19, 2022, West received a Notice of Right to Sue from EEOC, which stated that he could bring suit under the ADA within ninety (90) days of receipt of the notice. Id. ¶ 18; id. Ex. A-6.

**B.     Procedural History**

West timely filed suit against Scott Labs on December 5, 2022. Compl. at 1. He summarizes his discrimination and retaliation claims under the ADA and ADAAA as follows:

> Defendant discriminated and retaliated against plaintiff based upon disability. When the plaintiff objected, the defendant sought to impose non-job-related medical treatments and accommodations without first conducting an individualized assessment to determine if he was a direct threat.

Id. ¶ 9. West further states that he is proceeding "under both the 'regarded as' and the

'record of' prongs of the ADA" because Scott Labs' COVID-19 testing policy regarded him as having a disability.[1]  Id. ¶¶ 52–53.  He alleges that Scott Labs violated the ADA and ADAAA by imposing COVID-19 testing and terminating his employment.  Id. ¶¶ 53, 56–57.  Scott Labs now moves to dismiss the complaint, arguing that: (1) West fails to state a claim for disability discrimination under the ADA; and (2) West fails to state a claim for retaliation under the ADA.  Mot. at 4–10.  Scott Labs also requests judicial notice of EEOC policy regarding the ADA compliance of COVID-19 tests.[2]  Request for Judicial Notice ("RJN 1") (dkt. 11-2).  West opposes the motion to dismiss, and requests leave to amend.  Opp'n at 13.  Scott Labs replies and requests judicial notice of the Center for Disease Control's ("CDC") explanation on how to use COVID-19 tests at home.[3]  Reply; Request for Judicial Notice ("RJN 2") (dkt.13-1).

After Scott Labs replied, West filed an amended complaint on March 2, 2023.  Am. Compl. (dkt. 14).  This filing was improper because it did not comply with Rule 15 of the Federal Rules of Civil Procedure.[4]  Accordingly, the Court disregards West's amended

---

[1] West does not appear to assert a failure-to-accommodate claim.  If he did, such claim would fail.  As explained in Section III.A, West does not have a disability under the ADA.  Accordingly, Scott Labs is not required to make reasonable accommodations for West pursuant to the ADA.  42 U.S.C. § 12112(b)(5)(A); see, e.g., Allen v. Pac. Bell, 348 F.3d 1113, 1114 (9th Cir. 2003) ("to establish a prima facie case under the [ADA] . . . [employee] must first demonstrate that: (1) he is disabled within the meaning of the ADA . . . .").

[2] The Court GRANTS Scott Labs' RJN 1.  The contents of the policy are not "subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Courts "may take judicial notice of undisputed matters of public record," and EEOC policy is instructive in the instant action.  See Harris v. County of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012).

[3] The Court DENIES Scott Labs' RJN 2.  While the CDC's explanation is not "subject to reasonable dispute," it is not instructive here.  See Fed. R. Evid. 201(b)(2).  Scott Labs requests judicial notice of this explanation to demonstrate that COVID-19 tests are "non-invasive."  Reply at 4.  However, the Court need not reach that question because EEOC policy establishes that Scott Labs' testing policy fully complied with the ADA.  See RJN 1 Ex. A.

[4] Relevant here, FRCP 15(a)(1) allows a party to amend its pleading within 21 days of serving the original complaint or 21 days after service of a motion under Rule 12(b).  Fed. R. Civ. P. 15(a)(1).  West satisfied neither provision in filing his amended complaint.  First, because Scott Labs was served on January 17, 2023, West filed his amended complaint forty-four (44) days after service, and thus the filing was not proper pursuant to FRCP 15(a)(1)(A).  See Summons Returned Executed (dkt. 10); Am. Compl.  Second, because West was served with Scott Labs' Rule 12(b) motion on February 7, 2023, West

3

complaint.[5]

## II.  LEGAL STANDARD

A complaint may be dismissed for failure to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) applies when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory. Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a Rule 12(b)(6) motion. Id. (citing Twombly, 550 U.S. at 555). When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986); Clegg v. Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave to amend

---

filed his amended complaint twenty-three (23) days after service, and thus the filing was not proper pursuant to FRCP 15(a)(1)(B). See Proof of Service (dkt. 11-5); Am. Compl. Moreover, because the Court did not grant leave and there is no indication that Scott Labs consented to the filing, the amended complaint is not proper pursuant to FRCP 15(a)(2).

[5] Although a court may grant leave to amend even when a plaintiff does not request it, see Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990), the Court declines to do so here because the amended complaint does not cure the deficiencies in the original complaint. Instead, West restates the exact same claims under the ADA that he made in his initial filing. See Am. Compl. ¶¶ 80–191. Therefore, based on the reasons presented below, the amended complaint would also be subject to dismissal with prejudice for failure to state a claim.

"is not to be granted automatically." In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 738 (9th Cir. 2013). A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Finally, courts must construe pro se pleadings liberally and hold such pleadings to a less stringent standard than those drafted by attorneys. Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Hughes v. Rowe, 449 U.S. 5, 9 (1980) ("It is settled law that the allegations of [a pro se litigant's complaint] 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers . . . .'" (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972))). A court should dismiss a pro se complaint if "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012).

### III.   DISCUSSION

The Court discusses first (A) West's discrimination claim and then (B) his retaliation claim. As explained below, the Court dismisses both claims with prejudice.

#### A.   Discrimination Claim

West alleges first that Scott Labs unlawfully discriminated against him by implementing a COVID-19 policy that perceived him as having a disability. Compl. ¶ 53 ("regarded as having a disability by the 'Covid-19 Policy.'"). Scott Labs counters that COVID-19, a temporary illness, is not a disability under the ADA, and that, without a disability, West cannot state a discrimination claim under the ADA. Mot. at 4–8. In response, West reiterates that "defendant's 'Covid policy' regarded him as disabled and defendant made a record of this perceived disability," which is that West was "perpetually disabled by a deadly, contagious disease until and unless he was mitigated for this disability." Opp'n at 3–4.

5

To state a claim for disability discrimination under the ADA, a plaintiff must allege that: (1) they are disabled; (2) they are qualified for the job (i.e., able to perform the job's essential functions); and (3) they were subjected to an adverse employment action because of their disability. Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999). Regarding the first element of a discrimination claim, the ADA defines a "disability" as a physical or mental impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1)(A)–(C). Thus, to satisfy the "disabled" element of a disability discrimination claim, a plaintiff may allege that they are disabled, that they had a record of disability, or that their employer regarded them as disabled. See id.

Here, West alleges that Scott Labs both regarded him as disabled and had a record of him as disabled. Compl. ¶¶ 53, 80, 116–18. Both prongs fail.

First, West's "regarded as" theory—that Scott Labs perceived him as "infected or may in the future become infected with a deadly, infectious disease"—does not satisfy the ADA. See Compl. ¶ 86. Under the statute, being regarded as disabled does not apply to impairments that are "transitory and minor," or impairments with an actual or expected duration of six or fewer months. 42 U.S.C. § 12102(3)(b). Federal courts have consistently held that COVID-19 is "transitory and minor" and therefore not a disability under the ADA. See, e.g., Linne v. Alameda Health Sys., No. 22-cv-375687, 2023 WL 375687, at *2 (N.D. Cal. Jan. 24, 2023) (holding that employees cannot bring claims for being regarded as having an impairment because of workplace COVID-19 policies); Johnson v. Mount Sinai Hosp. Group, No. 22-cv-2936, 2023 WL 2163774, at *6 (E.D. N.Y. Feb. 22, 2023) (holding that COVID-19 is "transitory and minor" and thus does not fall under the ADA); Lundstrom v. Contra Costa Health Servs., No. 22-cv-06227, 2022 WL 17330842, at *5 (N.D. Cal. Nov. 29, 2022) (holding that "federal courts generally agree that a COVID-19 infection is not a disability" (collecting cases)); Sambrano v. United Airlines, Inc., No. 21-11159, 2022 WL 486610, at *29 n.51 (5th Cir. Feb. 17, 2022) (dissent noting that a COVID-19 infection "is far from meeting the ADA's 'demanding'

6

definition of disability" (case citation)).  Because COVID-19 is generally "transitory" and not a disability under the ADA, being perceived as having COVID-19 is not a disability under the ADA.[6]  See 42 U.S.C. § 12102(3)(b).

Second, West's "record of" theory also fails to satisfy the ADA.  To state a claim for disability discrimination based on a record of a disability, a plaintiff must plausibly allege that they have "a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment."  29 C.F.R. § 1630.2(k)(2).  Here, West alleges that Scott Labs "made a record of impairment by imposing its policy," and that it misclassified West as having or being "vulnerable" to contracting COVID-19.  Compl. ¶¶ 115, 117.  But a record that an employee has a condition that is not a disability does not satisfy the ADA requirements for disability discrimination.  See 29 C.F.R. § 1630.2(k)(2).  There simply is nothing to suggest that Scott Labs ever classified West as having an impairment that substantially limited one or more major life activities.  See id.

Because West does not have a disability under the ADA, he fails to satisfy the first element necessary for stating a viable discrimination claim, and thus his claim fails.  See Nunes, 164 F.3d at 1246.  The Court therefore need not address his other arguments on this claim.[7]

---

[6] As West states, based on guidance by the Department of Health and Human Services and Department of Justice, the court in Matias v. Terrapin House, Inc. held that certain forms of COVID-19 "may be considered a disability under the ADA."  No. 21-cv-02288, 2021 WL 4206759, at *4 (E.D. Pa. Sept. 16, 2021); Opp'n at 2.  Here, West does not allege, and there is nothing in the complaint to suggest, that Scott Labs perceived him as having such a form of COVID-19.  Thus, the Court finds that his claimed disability is a transitory form of COVID-19 that is not a disability under the ADA.

[7] West's additional arguments likely lack merit.  West argues that Scott Labs determined that he was a "direct threat" without conducting an "individualized assessment" as required by the ADA.  Opp'n at 6; see 29 C.F.R. § 1630.2(r).  However, Scott Labs' determination likely satisfies the ADA.  See Affidavit Ex. A-4; Together Emps. v. Mass Gen. Brigham, Inc., 573 F. Supp. 3d 412, 433 (D. Mass. 2021) (holding that it was reasonable for defendant to determine that unvaccinated employees pose a direct threat to hospital patients).  West's final arguments—that Scott Labs' COVID-19 testing policy was a non-job related medical inquiry prohibited by 29 C.F.R. § 1630.13(b), and that the policy violated medical privacy rights pursuant to 29 C.F.R. § 1630.14(c)—also fail because, according to EEOC policy, companies such as Scott Labs could test employees for COVID-19 without violating the ADA.  Compl. ¶¶ 88, 98; RJN 1 Ex. A.  At the outset of

7

Because West does not allege that he has a disability protected by the ADA, he cannot state a discrimination claim. Accordingly, because "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment," the Court GRANTS Scott Labs' motion to dismiss West's disability discrimination claim with prejudice. See Akhtar, 698 F.3d at 1212.

### B.    Retaliation Claim

West alleges next that Scott Labs retaliated against him "by imposing punitive measures and adverse employment actions," including terminating his employment. Compl. ¶¶ 144, 153. Scott Labs argues that West "did not engage in protected activity," and, alternatively, there was no "causal link between his protected activity and his termination." Mot. at 10. In response, West reiterates that he "was within a protected class and engaged in protected activity" because he invoked his rights under the ADA, and that the COVID-19 policy "was the direct and proximate cause of [Scott Labs'] decision to terminate" his employment. Opp'n at 12.

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation under the ADA, an employee must show that (1) they engaged in a protected activity, (2) they suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action. Pardi v. Kaiser Permanente Hosp., Inc., 389 F.3d 840, 849 (9th Cir. 2004).

Here, West's claim fails because he has not demonstrated that there was a causal link between his alleged protected activity and an adverse employment action.[8] West

---

the COVID-19 pandemic, EEOC's policy was that "the ADA standard for conducting medical examinations was . . . always met for employers to conduct worksite COVID-19 viral screening testing." RJN 1 Ex. A.

[8] In addition, West likely fails to demonstrate that his opposition to Scott Labs' COVID-19 policy was protected activity, which is generally defined as an action that requests an ADA remedy or that challenges a violation of the ADA. 42 U.S.C. § 12203(a). West

states that Scott Labs took two adverse actions: (1) implementing a COVID-19 testing policy and (2) terminating his employment. Compl. ¶¶ 145, 149.

First, as West and Scott Labs both observe in their pleadings, Scott Labs enacted its COVID-19 policy before West opposed the testing requirement. Affidavit ¶¶ 11–13; Mot. at 2–3. Scott Labs did not enact this policy in response to West's objection. Moreover, West does not allege that Scott Labs enacted the policy because of him. See generally Compl. Thus, it is unreasonable to infer that there was a causal connection between West's criticism of Scott Labs' policy and the implementation of the policy. See O'Hailpin v. Hawaiian Airlines, Inc., 583 F. Supp. 3d 1294, 1311 (D. Haw. 2022) ("Plaintiffs are unlikely to establish a prima facie case of retaliation . . . because the adverse employment actions . . . appear to be unconnected to their [accommodation] requests. Indeed, the vaccine policy was established, as well as the consequences for failing to comply[,] . . . before Plaintiffs submitted their [accommodation] requests.").

Second, West was not terminated for objecting to Scott Labs' COVID-19 policy. Rather, he was terminated for refusing to comply with it. Affidavit Ex. A-4 ("[Y]our refusal to submit to COVID-19 testing poses a direct threat to your fellow employees and to the Company's customers with whom you come into contact. Accordingly, your employment with Scott Laboratories is hereby terminated, effective immediately."). Thus, it is also unreasonable to infer that there was a causal connection between West's criticism of Scott Labs' policy and his termination. See Together Emps., 573 F. Supp. 3d at 444–45 (finding that plaintiffs likely could not show a causal connection between protected activity and an adverse employment action where defendant asserted that "plaintiffs [were]

---

simply alleges that he asked questions about the at-home COVID-19 tests, such as their ingredients and where they were made. Compl. ¶ 41; Ex. A-3. He then refused to comply with Scott Labs' testing policy. Id. ¶¶ 45–46. Asking questions about and refusing to take an at-home COVID-19 test is not protected activity under the ADA. West did not plausibly allege that Scott Labs' policy violated the ADA, or that his unwillingness to abide by the policy was a request for an ADA remedy, as he was not disabled. See Lundstrom, 2022 WL 17330842, at *6 n.7. But see Speaks v. Health Sys. Mgmt., Inc., No. 22-cv-00077, 2022 WL 3448649, at *6 n.9 (W.D.N.C. Aug. 17, 2022) (construing pro se plaintiff's complaint liberally to allege protected ADA activity because they raised concerns about the defendant's COVID-19 policy).

9

subject to unpaid leave and potential termination not because they requested exemption, but because they were not approved and remain[ed] noncompliant with the Vaccination Policy").

Because West cannot plausibly allege that Scott Labs' policy or his termination were retaliatory under the ADA, "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." See Akhtar, 698 F.3d at 1212. Accordingly, the Court GRANTS Scott Labs' motion to dismiss West's retaliation claim with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Scott Labs' motion to dismiss. The Court denies West leave to amend because amendment would be futile. See Leadsinger, 512 F.3d at 532.

**IT IS SO ORDERED.**

Dated: March 24, 2023

CHARLES R. BREYER
United States District Judge